JUDGE KATHLEEN CARDONE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| **ERIK SALAIZ,** | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § |
| | § |
| **TAX ADVOCATE GROUP, LLC** a California Limited Liability Company and **JONATHAN PINEDA** | § |
| | § |
| Defendants. | § **EP22CV0007** |

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1. Plaintiff ERIK SALAIZ ("Plaintiff") is a natural person and is a citizen of the Western District of Texas and was present in the Western District of Texas during all calls at issue in this case.

2. Defendant TAX ADVOCATE GROUP, LLC ("Tax Advocate") is a Limited Liability Company organized and existing under the laws of California and can be served via registered agent Spiegel & Utrera P.A. c/o Lawrence Spiegel at 8939 S. Sepulveda Boulevard, Suite 400 Los Angeles, California 90045.

3. Defendant JONATHAN PINEDA ("Pineda") is a natural person, resident of California, and Manager of Tax Advocate and can be served at 5301 Laurel Canyon Boulevard, #237 Valley Village, California 91607.

4. Defendant Tax Advocate principals place of business is 5301 Laurel Canyon Boulevard, #237 Valley Village, California 91607.

5. Defendants Tax Advocate and Pineda (together "Defendants")

## NATURE OF ACTION

6. Plaintiff brings this Complaint and Demand for Jury Trial against Defendants to stop placing illegal robo and unauthorized calls to Plaintiff's personal cell phone and to obtain redress as authorized by statute.

7. Defendants offer tax debt relief services to consumers. As part of marketing their services, Defendant Tax Advocate and their agents placed illegal robocalls to Plaintiff's cell phone that used an automated telephone dialing system ("ATDS").

8. Defendant Tax Advocate make unsolicited and unauthorized phone calls to thousands of consumers using artificial or prerecorded voice messages to sell their services.

9. Defendants did not obtain express written consent from Plaintiff prior to calling his cell phone, and Defendants are therefore liable under the Telephone Consumer Protection Act 47 U.S.C. § 227 (the "TCPA") and its implementing regulation, 47 C.F.R. § 64.1200(a)(2).

10. Congress enacted the TCPA in 1991 to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

11. The TCPA targets unauthorized calls exactly like the ones alleged in this case, based on Defendant Tax Advocate's use of technological equipment to spam consumers on a grand scale without their consent.

12. By placing the calls at issue, Defendants have violated the statutory rights and privacy of Plaintiff and caused him to suffer damages that are recognized by statute.

13. Plaintiff therefore seeks an injunction requiring Defendant Tax Advocate to stop calling his personal cell phone, as well as an award of actual and statutory damages, civil penalties, costs and reasonable attorneys' fees.

## JURISDICTION AND VENUE

14. This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as this case arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

15. This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053 because that claim arises from the same nucleus of operative fact, i.e., Defendants telemarketing robocalls to Plaintiff; adds little complexity to the case; and doesn't seek money damages, so it is unlikely to predominate over the TCPA claims.

16. This Court has personal jurisdiction over Defendants because they conduct business in this District and in the State of Texas and because the events giving rise to this lawsuit occurred in this District.

17. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendants regularly conducts business in the state of Texas and in this District, and because the wrongful conduct giving rise to this case occurred in this District.

## FACTUAL ALLEGATIONS

18. Plaintiff's personal cell phone (915) 490-0898 is on the National-Do-Not-Call-Registry.

19. Defendant Tax Advocate offers tax debt relief services to consumers who owe back taxes to the IRS.

20. Defendant Pineda is the Manager of Tax Advocate and controls and dominates Tax Advocate.

21. Defendant Pineda approves of the contracts with the telemarketers who make illegal robocalls with artificial or prerecorded voice messages to thousands of consumers cellular and residential phone numbers using an ATDS.

22. Defendant Pineda authorizes the payments to the telemarketers.

23. Defendant Pineda pays the telemarketers out of bank accounts he owns and controls.

24. Defendant Pinda provides instruction and guidance on who to solicit and the minimum qualifications of potential clients.

25. Defendant Tax Advocate has been sued before for TCPA violations (case # 1:2021cv06235) and Defendant Pineda continues to knowingly and willfully authorize telemarketers to place illegal robocalls (like the calls alleged in this complaint) to thousands of consumers en mass by using an ATDS.

26. Defendant Pineda has full control over Tax Advocate and has the authority to stop the illegal robocalls however has refused to do so because it benefits defendants financially.

27. On November 9, 2021 Plaintiff received the first of multiple unauthorized calls to his personal cell phone (915) 490-0898 from Defendant Tax Advocate from phone number (800) 926-5953.

28. Plaintiff answered and was greeted by a live representative named Billy Garcia that said he was calling from tax group and stated, "Yes we are calling today to offer the Covid-19 tax relief or the fresh start program for unpaid federal and state back taxes sir do you still owe the IRS or the state?"

29. Plaintiff advised Billy he owed back taxes to the IRS for the sole purposes of identifying who was responsible for making the illegal robocalls to his personal cell phone.

30. Billy then asked Plaintiff how he files then for personal information email, mailing address, and dob and advised Plaintiff he is going to transfer him to his "tax specialist."

31. Plaintiff was then transferred to a representative named Alex Miller who gathered more information about Plaintiff's taxes.

32. Alex then advised Plaintiff that a case like this usually costs around 40%-50% of the balance but in Plaintiff's case Alex said he would be okay doing it for $3,400 from start to finish and that includes the five-year monitoring, and the term would be anywhere from 24-36 months.

33. Plaintiff requested for Alex to email packet information so plaintiff can review. Alex agreed and emailed a contract packet that contained Tax Advocate's information revealing the company responsible for the unauthorized phone calls.

34. Plaintiff never gave his express written consent to receive phone calls from Defendant Tax Advocate and had no relationship with Defendant Tax Advocate prior to this interaction.

35. On November 11, 2021 Plaintiff received a call to his personal cell phone (915) 490-0898 from Defendant Tax Advocate from phone number (800) 926-5953.

36. Plaintiff answered and was greeted by the same representative Billy Garcia that stated he was calling from Tax Group and then the call was dropped.

37. On December 14, 2021 Plaintiff received a call to his personal cell phone (915) 490-0898 from Defendant Tax Advocate from phone number (800) 926-5953.

38. Plaintiff answered and was greeted by the same representative Billy Garcia that said he was calling from Tax Group and stated "yes sir we're calling today about the Covid-19 tax relief and the fresh start program for unpaid federal and state back taxes, is the IRS or the state still claiming that you still owe back taxes?"

39. Plaintiff advised that he already spoke to one of their representatives and was not interested in their services at the moment and would call back if he was. Alex apologized and stated he would wait for Plaintiff to call back.

40. Plaintiff never gave his express consent to receive follow up calls from Billy Garcia or any other representative from Defendant Tax Advocate.

41. The follow up calls from Billy Garcia made to Plaintiff's personal cell phone (915) 490-0898 are not in any way, shape, or form considered "business relationship" without Plaintiff giving his express consent to receive follow up calls.

42. Defendants purposefully availed themselves of the forum state by specifically targeting Texas residents by using Texas area codes to trick consumers into thinking the calls were local.

43. Table A displays the calls made by the defendants

| Date | Time | Caller ID |
|---|---|---|
| 11/9/2021 | 4:36PM | 800-926-5953 |
| 11/11/2021 | 12:16PM | 800-926-5953 |
| 12/14/2021 | 2:43PM | 800-926-5953 |

44.

45. Defendants employ outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes.

46. The unauthorized phone calls made from or on behalf of Defendant Tax Advocate to Plaintiff's personal cell phone (915) 490-0898 were made using an ATDS that has the capacity to store and produce telephone numbers using a random or sequential number generator.

47. The unauthorized phone calls made from or on behalf of Defendant Tax Advocate to Plaintiff's personal cell phone (915) 490-0898 generally had a delay of 3-4 seconds of dead air before an audible tone connected the Plaintiff to a representative, indicating the calls were initiated using an ATDS.

48. Defendants do not have a solicitation registration certificate on file with the Texas Secretary of State as required to make telephone solicitations to Texas residents. Plaintiff is a Texas resident.

49. The Defendants never sent Mr. Salaiz any do-not-call policy. Plaintiff sent an internal do-not-call policy request to processing@taxadgroup.com.

50. On information and belief, the Defendants did not have a written do-not-call policy while it was sending Mr. Salaiz the unsolicited calls.

51. On information and belief, the Defendants did not train its agents who engaged in telemarketing on the existence and use of any do-not-call list.

52. Defendant Pineda participated in, facilitated, directed, authorized, knew of or willfully ignored the false and misleading sales practices and unlawful robocalling, while knowing facts that required a reasonable person to investigate further, and approved, and ratified

the conduct of their employees, agents, and co-conspirators to engage in the false and misleading sales practices and unlawful robocalling.

53. Defendants have knowledge of and have adopted and maintained TCPA violations as a sales strategy. This is amply supported by the complaints Defendants receive that are available from the Better Business Bureau ("BBB"). The full scale of the complaints Defendants receive is not currently available to Plaintiff but will be revealed through discovery to amplify what is shown below.

54. Defendants refuse to take any action to stop or curtail the unlawful sales practices and robocalling because these practices benefit Defendants financially.

55. Plaintiff never consented to receive the calls alleged herein. Plaintiff had no relationship with Defendants prior to the calls alleged herein.

### The Texas Business and Commerce Code 305.053

56. The Texas Business and Commerce code has an analogous portion that is related to the TCPA and was violated in this case.

57. The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

### Violations of the Texas Business and Commerce Code § 302.101

58. The actions of the defendants violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having registration certificate and bond on file with the Texas Secretary of State.

59. Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

60. The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

61. Texas Business and Commerce Code §302.101 states that a person (1) "may not make a telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas]," (2) "unless the [person] holds a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Com. Code § 302.101(a).

62. Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek damages of up to $5000 per violation of §302.101.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES
## AS A RESULT OF THE CALLS

63. Plaintiff has been annoyed, harassed, and irritated by robocalls placed by the Defendants and other similar companies.

64. Plaintiff has been denied the use of his phone, enjoyment of his phone, and had the functionality of his phone decreased because of unnecessary charging, erosion of phone memory, and had his privacy invaded by the harassing robocalls.

## **FIRST CAUSE OF ACTION**

## Willful and/or Knowing Violation of 47 U.S.C. § 227
## Telephone Consumer Protection Act of 1991
## (Against all Defendants)

65. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

66. Defendants and/or their agents placed calls to Plaintiff's cellular telephone.

67. Plaintiff never consented to receive calls from Defendants. Plaintiff has no relationship with Defendants.

68. Defendants' calls were made for purposes of advertising and marketing Defendants' tax debt relief services. These calls constituted commercial advertising and telemarketing as contemplated by the TCPA.

69. The calls were made using an artificial or prerecorded voice message to the cellular phone of Plaintiff in violation of 47 U.S.C. § 227(b)(1)(A)(iii) and (B).

70. As a result of their unlawful conduct, Defendants repeatedly invaded the personal privacy of Plaintiffs, causing Plaintiff to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling Plaintiff to recover $500 in statutory damages for each violation and an injunction requiring Defendants to stop their unlawful calling campaigns.

71. Not only did Defendants make these violating calls, Defendants and/or their agents did so "knowingly" and/or "willfully' under 47 U.S.C. § 227 (b)(3)(C).

72. If the Court finds that Defendants willfully or knowingly violated this subsection, the Court may exercise its discretion to increase the amount of the award from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

## SECOND CAUSE OF ACTION

## Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d)
### (Against All Defendants)

73. Plaintiff incorporates the forgoing allegations as if fully set forth herein.

74. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

    a. written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1) [1];

    b. training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2) [2]; and,

    c. in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[3]

75. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

76. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

## THIRD CAUSE OF ACTION
### Violations of The Texas Business and Commerce Code 305.053

77. Plaintiff incorporates the foregoing allegations as if set forth herein.

---

[1] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order

78. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing robocalls to Mr. Salaiz cellular telephone number without his prior express written consent in violation of 47 USC 227 et seq. The Defendants violated 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

79. Plaintiff is entitled to an award of at least $500 in damages for each such violation. **Texas Business and Commerce Code 305.053(b)**

80. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053(c)**

## FOURTH CAUSE OF ACTION

### (Violations of The Texas Business and Commerce Code 302.101)

81. Plaintiff incorporates the foregoing allegations as if set forth herein. by reference each and every allegation set forth in the preceding paragraphs.

82. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 302.101**, by making non-registered solicitation calls to Plaintiff's cellular telephone number without his prior express written consent.

83. Plaintiff is entitled to an award of up to $5,000 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 302.302.**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Erik Salaiz prays for judgment against the defendants jointly and severally as follows:

A.  Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.  A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C.  An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.  An award of $3000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation and individual for three calls.

E.  An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

F.  An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101.

G.  An award to Mr. Salaiz of damages, as allowed by law under the TCPA;

H.  An award to Mr. Salaiz of interest, costs and attorneys' fees, as allowed by law and equity

I.  Such further relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

January 3, 2021                    Respectfully Submitted,

                                    Erik Salaiz
                                    Plaintiff, Pro Se

319 Valley Fair Way
El Paso, Texas 79907
915-490-0898
Salaiz.ep@gmail.com